**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Stanely E.  Leib,

       Plaintiff,

    v.                         Case No.  2:04cv258

Atlas Capital Services, Inc., et al.,        District Judge Michael H. Watson

       Defendants.

## OPINION

Before the Court are the following:

1.      The January 21, 2005 Motion of Defendants, Atlas Capital Services, inc. (Hereinafter "Atlas"), Mark D.  Swepston and Russ Puckett (hereinafter collectively "Defendants"), for Summary Judgment (Doc. 22).  Plaintiff Stanley E.  Leib (hereinafter "Plaintiff") filed a Memorandum in Opposition on February 4, 2005 (Doc. 28). Defendants filed a Reply Memorandum on February 11, 2005 (Doc. 29).

2.      The January 28, 2005 Motion of Plaintiff for Summary Judgment (Doc. 27).  Defendants filed a Response on February 22, 2005 (Doc. 30).  Plaintiff filed a Reply Memorandum on March 13, 2005 (Doc. 32).

3.      The February 24, 2005 Motion of Plaintiff to Strike Exhibit A Paragraph 10 of the Affidavit of Defendant Russell M. Puckett and All Reference to Such Items.  (Doc. 31).  Defendants filed a Response on March 25, 2005 (Doc. 33).  Plaintiff filed a Reply Memorandum on March 31, 2005 (Doc. 35).  Upon consideration, the Motion of Plaintiff to Strike (Doc. 31) is hereby **DENIED.**

4.    The March 29, 2005 Motion of Plaintiff to Strike the March 25, 2005 Response of Defendants (Doc. 34).  Upon consideration, the March 29, 2005 Motion of Plaintiff to Strike the March 25, 2005 Response of Defendants (Doc. 34) is hereby **DENIED.**

5.    The April 1, 2005 Motion of Defendants for Extension of Time (Doc. 36). For good cause shown, the April 1, 2005 Motion of Defendants for Extension of Time (Doc. 36) is hereby **GRANTED.**

6.    The April 22, 2005 Motion of Defendants for Leave to File Supplemental Response (Doc. 39).  Plaintiff filed a Memorandum in Opposition on May 16, 2005 (doc. 43).  For good cause shown, the April 22, 2005 Motion of Defendants for Leave to File Supplemental Response (Doc. 39) is hereby **GRANTED.**

The cross-motions for summary judgment are now ripe for review.  For the reasons stated herein, the January 21, 2005 Motion of Defendants for Summary Judgment (Doc. 22) is hereby **DENIED** and the January 28, 2005 Motion of Plaintiff for Summary Judgment (Doc. 27) is hereby **DENIED.**

## I.    <u>FACTS</u>

Plaintiff was born July 27, 1948 and, at all relevant times, was over forty-years of age. (Doc.  27, Affidavit of Plaintiff ¶2)  Famous Distribution, Inc. (hereinafter "Famous") employed Plaintiff from November 3, 1997 to March 29, 2002, as a manager and sales representative selling heating, ventilation and air conditioning supplies to vendors, including Atlas.   (Id. ¶6) Plaintiff was terminated from his employment by Famous on March 29, 2002.  (Id.)

On June 17, 2002, Plaintiff filed a civil suit against Famous in Franklin County Court of Common Pleas, *Leib v. Famous Distribution Inc.,* Case No. 02CVH06-6854 (hereinafter "*Famous* lawsuit") (Id. ¶7; Doc. 27, Exh. 1)  He asserted claims arising from his former employment, including a claim of unlawful age discrimination.  (Id.)

In the fall of 2002, Atlas invited Plaintiff to interview for a new position, Territory Operations Manager.  (Doc. 27, Affidavit of Plaintiff ¶8)  Plaintiff was interviewed by Mr. Puckett.  (Id.)  Plaintiff contends that, on November 1, 2002, Mr. Puckett extended an offer of employment with Atlas for the Territory Operations Manager with an annual guaranteed compensation of $80,000, participation in all existing company-sponsored employee benefit programs and either a company car or car allowance.  (Id.)  Plaintiff maintains he immediately accepted the offer and a start date of November 12, 2002 was agreed upon.  (Id. ¶9) Additionally, Plaintiff asserts Mr. Puckett provided him with a copy of Atlas' Benefits Renewal Information.  (Id.; Doc. 27, Exh. 2)

Plaintiff understood his job offer to be contingent upon him submitting to a pre-employment medical examination, which he asserts consisted of a drug and alcohol test (hereinafter "Test").  (Doc. 27, Affidavit of Plaintiff ¶10)  On November 6, 2002, Mr. Puckett informed Plaintiff arrangements for the test were made for November 7, 2002 at Ohio State University Medical Center East (hereinafter "OSU").  Additionally, Mr. Puckett gave Plaintiff an Application for Employment (hereinafter "Application") and a one-page confidentiality/noncompetition agreement to complete.  (Id.; Doc. 27, Exh. 3 and Exh. 4)

Plaintiff appeared for the Test on November 7, 2002, and prior to submitting to the Test, completed and signed an authorization form entitled "Chain of Custody and

2:04cv258                                                                                                  3

Control Form for Drug and Alcohol Analysis" (hereinafter "Analysis Form"). (Id ¶11; Doc. 27, Exh. 5) After the test, Plaintiff went to Atlas' offices and met with Mr. Puckett. At that time, Plaintiff returned to Mr. Puckett the completed Application and confidentiality/noncompetition agreement. (Id.¶¶10-11) On the Application, Plaintiff left blank the "Salary desired" and listed November 11, 2002 as "Date available for work."

It was at this time that Mr. Puckett informed Plaintiff he had learned of the *Famous* lawsuit. (Id. ¶12) Mr. Puckett contends he told Plaintiff Famous was Atlas' biggest dealer and, as he would be working with Famous' employees daily, the working relationship would be better if he did not have a lawsuit pending against Famous. (Doc. 33, Exh. A, Depo. Russell M. Puckett, p. 42) Mr. Puckett maintains he never told Plaintiff, in order to work for Atlas, he needed to dismiss, settle or resolve the pending litigation. (Id.) Plaintiff's recollection of what transpired directly contradicts Mr. Puckett's. Instead, Plaintiff contends Mr. Puckett informed him he could not start work for Atlas while the *Famous* lawsuit remained pending. (Doc. 27, Affidavit of Plaintiff ¶12) Plaintiff contends he provided Mr. Puckett with a copy of the complaint in the *Famous* lawsuit and pointed out it contained claims of age discrimination. (Id.) Moreover, Plaintiff asserts he informed Mr. Puckett the only way the case would be resolved immediately was to dismiss it. (Id. ¶13) Plaintiff maintains he inquired whether he would be able to start work on November 12, 2002, as previously agreed, if he immediately dismissed the suit and Mr. Puckett responded affirmatively. (Id.)

Plaintiff contends he was concerned Atlas would terminate his employment and, as such, directed his attorney to dismiss the *Famous* lawsuit immediately. (Id. ¶14) Plaintiff e-mailed a copy of the Notice of Dismissal, which was to be filed, to Mr. Puckett

2:04cv258                                                                                                    4

on November 7, 2002 (Doc. 27, Exh. 6) Plaintiff contends, upon receiving the e-mail and Notice of Dismissal, Mr. Puckett called him and told him he could begin work on the 12th if the Notice was filed. (Doc. 27, Affidavit of Plaintiff, ¶15)

Plaintiff's counsel filed the Notice of Dismissal on November 12, 2002 (Doc. 27, Exh. 7) and forwarded a time-stamped copy to Mr. Puckett. (Doc. 27, Affidavit of Plaintiff, ¶15) Subsequently, Plaintiff contends Mr. Puckett called him and confirmed Plaintiff would start work on the 12th as previously agreed. (Id.)

Plaintiff reported for work at Atlas on November 12, 2002. (Id. ¶16) However, Plaintiff maintains, after initially being told to wait for information being assembled by Atlas' Chief Financial Officer, Larry Winner, Mr. Puckett eventually told Plaintiff to go home and return the next day. (Id.)

In the afternoon of November 12, 2002, Plaintiff received an e-mail message from Mr. Puckett which, Plaintiff contends, contained an entirely new Employment Agreement (hereinafter "Agreement") for him to execute. (Id. ¶17; Doc. 27, Exh. 8) Plaintiff asserts he had not previously discussed with Mr. Puckett or agreed to executing an employment agreement, in general, or in conformity with the specific provisions set forth in the Agreement. (Id.) The Agreement contained, *inter alia*, a clause regarding Plaintiff's post-employment competition with Atlas and an entirely new provision setting forth Plaintiff's release of any and all claims against Atlas (hereinafter "Release"). (Id. ¶18)

Subsequently, the parties exchanged various versions of the Agreement. (Id. ¶19) However, they were unable to reach a mutually agreeable proposal, which Plaintiff asserts conformed to the employment offer Atlas extended and he accepted on

November 6, 2002.[1]  As such, Atlas, by letter dated November 22, 2002, informed Plaintiff it would not hire him.  (Id. ¶22)

Plaintiff filed the instant action April 4, 2004, asserting claims for unlawful age discrimination and/or retaliation, pursuant to 29 U.S.C. §621 *et seq.* of the Federal Age Discrimination in Employment Act (hereinafter "ADEA"), and O.R.C. §4112.01, and for unlawful employment discrimination in violation of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. §12101, *et seq.*

## II.  ARGUMENTS OF PARTIES

### A. Retaliation

#### 1.  *Defendants*

Defendants argue Plaintiff is unable to establish a *prima facie* claim of retaliation as there was no employment relationship between Atlas and Plaintiff.  Defendants maintain an offer of employment was not extended until after the *Famous* lawsuit was dismissed.  Negotiations continued for ten (10) days with no agreement reached by the parties.  In support of its position, Defendants point to a number of circumstances. Notwithstanding Plaintiff's assertion that Defendants extended an offer to him which he accepted on November 6, 2002, Plaintiff did not complete the Application until November 7, 2002.  Moreover, the Application contained inconsistencies.  It states Plaintiff was available for work on November 11, 2002, however, Plaintiff contends, on November 6, 2002, the agreed upon start date was November 12.  Additionally, the

---

[1]The Court notes Plaintiff's assertion in ¶20 of his Affidavit that he accepted the offer of employment on November 6, 2002 contradicts his assertion  in ¶8 of his Affidavit, which states "On November 1, 2002, [Mr.] Puckett extended to me an offer of employment with Atlas...I immediately accepted [Mr.] Puckett's offer...." (Emphasis Added)

"Desired salary" line was left blank, yet Plaintiff argues he was guaranteed $80,000 annual compensation on November 6, 2002.

Defendants also argue Plaintiff is unable to establish a retaliation claim pursuant to 29 U.S.C. §623 *et seq.* as the *Famous* lawsuit, upon which he bases his claim of retaliation, does not assert a claim under the ADEA. Instead, the *Famous* lawsuit merely references the ADEA in support of Plaintiff's claim of wrongful discharge in violation of an Ohio public policy against age discrimination in employment. Thus, as Plaintiff failed to assert any rights under the ADEA in the *Famous* lawsuit, Defendants argue he cannot, in any way, prove an exercise of an ADEA protected right. Moreover, he is unable to prove a causal connection between a non-existent protected activity under the ADEA and any perceived adverse employment action.

Defendants contend Plaintiff is unable to establish a *prima facie* case for retaliation as they did not require Plaintiff to dismiss the *Famous* lawsuit. While Defendants concede Mr. Puckett expressed concern over Plaintiff's ability to perform the duties of the contemplated position due to the pending lawsuit, he did not require its dismissal. Instead, Defendants argue Plaintiff, who had been unemployed for a number of months, voluntarily offered to dismiss the lawsuit to allevaite Mr. Puckett's concerns. Defendants also assert the Release in the Agreement does not violate the ADEA as it is standard language in employment agreements for Atlas' management personnel. Additionally, the Release's language is insufficient to release any claims under the ADEA. Moreover, as Plaintiff makes no allegation he informed Atlas he had intended to assert any rights under the ADEA against Atlas, each element required for

a *prima facie* case under the ADEA is foreclosed.

        2.     *Plaintiff*

      Plaintiff argues the undisputed facts reveal Defendants retaliated against Plaintiff by revoking its November 2, 2002[2] offer of employment to Plaintiff because the *Famous* lawsuit was pending.  Plaintiff maintains the evidence establishes he engaged in activity protected by the ADEA by pursuing age discrimination claims against Famous.  Upon learning of this activity, Plaintiff asserts Defendants withdrew the offer of employment and informed Plaintiff he could not work for Atlas while pursuing his claims against Famous.  Instead, Defendants informed Plaintiff the offer would only be reinstated upon dismissal of the *Famous* lawsuit.

      Furthermore, Plaintiff contends the undisputed facts demonstrate Atlas unlawfully retaliated against Plaintiff by modifying the November 6, 2002 offer of employment because he had sued Famous and to prevent him from asserting his rights under the ADEA against Defendants.  The Agreement which Defendants presented to Plaintiff after he dismissed the *Famous* lawsuit imposed an entirely new condition on Plaintiff, the Release, which he was required to accept before he could start work with Atlas. While Plaintiff requested Atlas delete the Release's language, Defendants refused.  As such, Plaintiff argues Atlas' refusal to hire him, after he fulfilled all of the conditions of his November 6, 2002 offer for employment and after he dismissed the *Famous* lawsuit, because he would not agree to sign the Agreement with the Release is retaliatory

---

[2]The Court again notes Plaintiff asserts another day in November for the date of the alleged offer of employment by Mr. Puckett. *See* Doc. 27, p. 16.  From this point forward, regardless of the date asserted by Plaintiff in a particular brief or affidavit, the Court will, for ease of reading and to prevent further confusion, refer to November 6, 2002 as the date the offer of employment was allegedly extended by Mr. Puckett.

conduct prohibited by the ADEA.

Additionally, Plaintiff maintains that Atlas' assertiont it could not retaliate against Plaintiff because he was never an employee is contrary to case law.  Instead, it is the withdrawal of the offer which constitutes the adverse employment action when it is the direct result of Plaintiff's efforts to prosecute his age discrimination claims against Famous.

Plaintiff also contends he did engage in activity subject to the anti-retaliation provisions of the ADEA.  Plaintiff asserts a complete reading of 29 U.S.C. §623(d) reveals two independent bases for asserting a claim for retaliation (1) one which expressly protects an employee for any act in opposition to unlawful discriminatory practices based upon age, and (2) one which conditions such protection upon activities "under this Act."  Plaintiff asserts his claims are brought pursuant to the first basis, by bringing a claim of age discrimination in state court under state law, Plaintiff "opposed a [ ] practice made unlawful by [§623]," namely age discrimination.  As such, Plaintiff alleges there can be no serious dispute the *Famous* lawsuit, which asserted an age discrimination claim under O.R.C. §4112 *et seq.*, constituted a protected activity in opposition to a "practice made unlawful by " 29 U.S.C. §623(d) of the ADEA.

Furthermore, Plaintiff contends the enforceability of the Release is irrelevant currently.  Instead, Plaintiff argues what is important is that, after learning of the *Famous* lawsuit and forcing him to dismiss it, Defendants suddenly demanded that Plaintiff sign the Release as a new condition of employment.  Plaintiff maintains this is precisely the kind of preemptive retaliatory conduct which the ADEA was enacted to prevent.

Similarly, Plaintiff contends the evidence establishes Atlas retaliated against him

under Ohio law.  Atlas' unilateral revocation of a previous offer or employment and subsequent demand that Plaintiff dismiss the *Famous* lawsuit as a condition precedent to his employment with Atlas violates O.R.C. §4112.01 *et seq.*

    B.    <u>ADA</u>

Defendants maintain Plaintiff is unable to establish a violation of the ADA for improper pre-employment medical examinations as he was not tested for alcohol. Notwithstanding the fact the Analysis Form signed by Plaintiff referenced drug and alcohol testing, Defendants argue the wording on the Analysis Form utilized by OSU is out of their control.  Moreover, an examination of the Analysis Form reveals it is meant for a variety of uses and may be used in conjunction with drug testing, alcohol testing, or both.  Defendants contend the substantive proof of what exactly Plaintiff was tested for is revealed in the November 8, 2002 test results, which clearly demonstrate Plaintiff was tested solely for illegal substances and not alcohol.

Plaintiff contends he is entitled to judgment as a matter of law on his claim Atlas violated the ADA by requiring him to submit to a prohibited pre-employment alcohol test. Plaintiff argues Atlas acknowledged it violated the law when it required Plaintiff to submit to a drug and alcohol test.  (Doc. 33, Exh. B, Depo. Mark D. Swepston, p. 30) Additionally, Plaintiff maintains the affidavit of Mr. Puckett is inconsistent with his previous testimony and contradicts the admissions of Defendants Swepston, Benua and Winner.  It is an impermissible attempt to create a genuine issue of material fact which is impermissible.

III. **ANALYSIS**

    A.    Summary Judgment Standard

    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

    B.    Retaliation

    29 U.S.C. §623(d) states, in pertinent part, it is unlawful "for an employer to discriminate against any of his employees **or applicants for employment**...because such individual...has opposed any practice made unlawful by this section, or because such individual....has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act." (Emphasis Added)

Similarly, O.R.C. §4112.02 states, in relevant part:

It shall be an unlawful discriminatory practice:

(A)     For any employer, because of the ...age...of any person, to ...refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

***

(I)     For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing....

The Ohio Supreme Court generally follows the analytic framework established by federal case law for use under the ADEA, in interpreting and deciding age-discrimination claims brought under O.R.C. §§4112.02 and 4112.14. *See Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St. 3d 578, 582; *Kohmescher v. Kroger Co.* (1991), 61 Ohio St. 3d 501, syllabus. The analysis is the same for state law claims of age discrimination under O.R.C. §§4112.02 and 4112.14. *See Byrnes v. LCI Communications Holdings Co.* (1996), 77 Ohio St. 3d 125. As such, the discussion which follows pertains to Plaintiff's retaliation claims pursuant to federal and Ohio state law.

To establish a *prima facie* case for retaliation, Plaintiff must show the following:

(1)     he engaged in protected activity;
(2)     Defendants knew of the exercise of Plaintiff's rights;
(3)     thereafter, the Defendants took an employment action adverse to Plaintiff; and
(4)     a causal connection between the protected activity and the adverse employment action.

*EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir. 1997).

First, Plaintiff engaged in protected activity by prosecuting an age discrimination claim against Famous, his former employer. Additionally, the Court finds to be without merit Defendants' contention this activity may not be the basis of a retaliation claim pursuant to the ADEA as Plaintiff only pursued Ohio state law claims, and not ADEA claims, in the *Famous* lawsuit.   This position, as argued by Plaintiff, disregards the plain language of 29 U.S.C. §623(d) which states it shall be unlawful for an employer to discriminate against an applicant for employment who opposed a **practice made unlawful by the ADEA**.  In the *Famous* lawsuit, Plaintiff was opposing the allegedly unlawful practice by Famous of discriminating on the basis of age, which is unlawful under the ADEA., The mere fact the claim was asserted pursuant to Ohio law does not alter this fact.  Moreover, such a narrow reading of the ADEA undermines the purpose of the legislation and is contrary to the developed body of case law which has interpreted the ADEA broadly.  *See e.g. Holt v.  JTM Industries, Inc.,* 89 F.3d 1224, 1226 (5th Cir. 1996)*; Gill v.  Rinker Materials Corp.,* 2003 U.S. Dist.  LEXIS 2986, No.  3:02-cv-13 (February 24, 2003).  As such, the fact the *Famous* lawsuit failed to assert ADEA age discrimination claims does not preclude it from being a protected activity under the ADEA.

As to Defendants' knowledge, the parties do not dispute Defendants were aware of Plaintiff's lawsuit against Famous. However, there is a dispute over whether Defendants were aware the suit involved claims for age discrimination. As discussed in greater detail below, resolution of the parties' conflicting versions of what transpired regarding knowledge of the content of the *Famous* lawsuit is a credibility issue to be resolved by the jury.

The next issue is whether Defendants took an adverse employment action

against Plaintiff.  An adverse employment action is more than a "mere inconvenience or

an alteration of job responsibilities" or a "bruised ego".  *White v. Burlington Northern &*

*Santa Fe Railway Co.,* 364 F.3d 789 (6th Cir. 2004) (citations omitted).  Instead, it

"constitutes a significant change in employment status, such as **hiring**, firing, failing to

promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits."  *Burlington Industries v. Ellerth,* 524 U.S. 742, 761 (1998)

(Emphasis Added).

Currently, Plaintiff contends Defendants took two adverse employment actions

against him:

> (1)  the withdrawal of the offer of employment and requiring him to dismiss the *Famous* lawsuit; and
>
> (2)  insisting Plaintiff sign the Agreement which contained the Release as a condition to employing Plaintiff after Atlas had already extended him a job offer.

Upon consideration, contrary to the parties' respective positions, the facts in this

matter are in dispute as to whether Defendants extended an offer of employment to

Plaintiff on November 6, 2002.  As discussed above, Plaintiff maintains Mr. Puckett

extended an offer of employment to him on November 6, 2002 with an agreed upon

salary of $80,000 and a start date of November 12, 2002, which Plaintiff accepted.  The

only contingency was Plaintiff's need to take and pass the Test.  In contrast to Plaintiff's

recitation of events, is the completed Application, which does not set the "Salary

desired" and the starting date is listed as November 11, 2002.  However,

counterbalancing these inconsistencies is the following deposition testimony by Mr.

Puckett regarding, generally,  the timing of the drug testing:

Q.[Plaintiff's counsel]: ...Wasn't the procedure in November 2002 that someone would get a conditional offer of employment, conditioned upon them passing a drug test; and if they accepted the offer of employment, they would undergo a drug test?

A.[Mr. Puckett]: That's probably true.

(Doc. 33, Exh.A, Depo. Russell M. Puckett, p. 30).

Similarly, a dispute exists regarding whether Mr. Puckett required the dismissal of the *Famous* lawsuit in order for the alleged November 6, 2002 job offer to remain in place. Plaintiff avers after being extended the offer of employment, Mr. Puckett imposed the additional condition of resolving the *Famous* lawsuit prior to being able to begin work for Atlas. (Doc. 27, Affidavit of Plaintiff ¶13) In addition, Plaintiff relies on contemporaneous correspondence with Mr. Puckett regarding the *Famous* lawsuit. (Doc. 27, Exh. 6 and Exh. 7) However, not surprisingly, Mr. Puckett's recollection is far different:

A.[Mr. Puckett]: ...,I said, You know, you're going to be working with these guys every day. We're their biggest dealer. And, you know, I don't know what you got going, but I think it would be - - it would work better if you didn't have a lawsuit.

And he said, Do you want me to take - - drop my lawsuit?

And I said, I'm not saying that. I'm saying it would work better....

Q.[Plaintiff's counsel]: So your testimony is that you did not tell [Plaintiff] that he needed to dismiss, settle, or resolve his Famous lawsuit before he could come work...for Atlas. Is that your sworn testimony?

A.: That is.

(Doc. 33, Exh. A. Depo Puckett, p. 42)

Weighing evidence and making credibility determinations is at the crux of resolving the parties' differing viewpoints on how events unfolded with respect to the alleged November 6, 2002 offer of employment and the dismissal of the *Famous* lawsuit. However, it is not proper for the Court to engage in credibility determinations at the summary judgment stage. The resolution of the disputed material issues of fact properly rests with the jury, the trier of fact.

Moreover, the Court concludes the resolution of whether Atlas imposed the additional requirement of signing the Agreement after the *Famous* lawsuit had been dismissed, hinges upon whether there was an offer of employment extended on November 6, 2002.

Similarly, the resolution of whether Plaintiff's prosecution of the *Famous* lawsuit was causally connected to the alleged withdrawal of the November 6, 2002 offer of employment is contingent on how the trier of fact determines the factual disputes regarding the alleged November 6, 2002 offer of employment. If the trier of fact concludes Atlas did extend a job offer to Plaintiff on November 6, 2002, it is arguable that circumstantial evidence may lead a reasonable fact finder to conclude there was a causal link between the protected activity and the adverse employment actions.

Accordingly, neither Plaintiff nor Defendants are entitled to judgment as a matter of law on Plaintiff's retaliation claims.

C.     ADA

The Court also concludes neither Plaintiff nor Defendant is entitled to summary judgment with respect to Plaintiff's ADA claim. While Defendants correctly argue the

substantive proof of whether Plaintiff was subjected to an improper pre-employment medical exam is contained in the November 8, 2002 report from OSU (Doc. 29, Exh. A), this document has not been properly authenticated. As such, the Court is unable to consider the November 8, 2002 report. The Court notes, however, that if the November 8, 2002 report were properly authenticated, a material issue of fact would not exist with respect to Plaintiff's ADA claim. Instead, the evidence would clearly reveal, notwithstanding the equivocation between Mr. Puckett's deposition testimony and his affidavit or the fact the Analysis Form which Plaintiff executed at OSU was captioned with both drug and alcohol test, the only pre-employment medical test Plaintiff submitted to was a drug test which is permissible under the ADA.

Accordingly, summary judgment is not appropriate in favor of either Plaintiff or Defendants on Plaintiff's ADA claim.

## IV. CONCLUSION

In conclusion, material issues of fact exist as to whether:

(1)    Defendants extended an offer of employment to Plaintiff on November 6, 2002,

(2)    Defendants required Plaintiff to dismiss the *Famous* lawsuit before he could come to work for Atlas, and

(3)    Defendants knew the *Famous* lawsuit involved claims for age discrimination.

Resolution of these issues must be resolved by the trier of fact. Additionally, as the November 8, 2002 report from OSU has not been properly authenticated, material issues of fact exist as to whether Plaintiff was subjected to an unlawful pre-employment medical test.

2:04cv258                                                                                                    17

Therefore, The January 21, 2005 Motion of Defendants for Summary Judgment (Doc. 22) is hereby **DENIED** and the January 28, 2005 Motion of Plaintiff for Summary Judgment (Doc. 27) is hereby **DENIED.**

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**